(Decided 15th February, 1872.)

ANDREW REID *vs.* ANNIE B. GORDON, and others.

*Conversion of a Legal estate for life, into an Equitable estate—Power of Sale—Power appendant—Power in gross—Right of a Purchaser to have his Title perfected.*

A testator by the third clause of his will, devised to his wife, for life, a certain house and lot on Mount Vernon Place, in the City of Baltimore; and by the fourth clause he gave her full power, at any time, to sell and convey the same, with direction that the proceeds of sale should be invested by her, in conjunction with two other trustees named in the twelfth clause of the will, for her sole and separate use, during her life, she to receive the interest and income from the investment, and the purchaser should not be bound to see to the application of the purchase money. By the tenth clause of the will the testator directed that all property devised to his wife for life, should, after her death, be equally divided amongst his children. By the twelfth clause the wife, together with the trustees therein named, were empowered to receive the proceeds of the estate, and invest the same in trust, for the use and benefit of the testator's children, and to sell any part of his estate, as they might deem advantageous, and generally to do all acts and things as should be most conducive to the interest of the children. Sometime after the death of the testator, his widow, for and in consideration of a contemplated marriage, and of one dollar, made and executed in conjunction with her intended husband, a deed of settlement, whereby she conveyed to one of the trustees named in the will of her deceased hus-

band, all the estate to which she was in any manner entitled, certain specific property, other than the house and lot in Baltimore City, excepted ; and the trusts and powers declared were, that the grantor should, during her life, hold and enjoy the property as a *féme sole*, without its being in any way subject to the control of her intended husband, or liable for his debts, and might sell, convey and assign absolutely all the estate and property conveyed, or any part thereof, for such price or prices, and upon such terms as she might think proper, without the assent or concurrence of her intended husband, or the trustee named in the deed ; the proceeds of sale to be invested in other good security, to be held upon the same trusts and subject to the same powers afore-mentioned in reference to the property conveyed. It was also declared that the purchaser should not be bound to see to the disposition of the purchase money. Under the deed of settlement, the proceeds of sale were to be held to the use and enjoyment of the intended husband for life, after the death of the wife, if he should survive her, and from and after his death, or the death of the wife, if she should survive him, to the use and benefit of their children, or their descendants ; and in default of such descendants, then to the use and benefit of the children of the wife by the first husband. The contemplated marriage took place, and children were born to the parties ; and subsequent to these events, the wife in the exercise of the power given to her by her former husband's will, sold the house and lot in Baltimore City to the appellant, in fee simple. This sale she, together with the other trustees named in the will, reported to the Circuit Court for Baltimore County, in Equity, for ratification under the Act of 1870, ch. 370. Upon objections to the ratification of the sale by the purchaser, it was HELD :

1st. That by the deed of settlement, which operated as a bargain and sale, the legal estate for life of the wife in the house and lot, under the will, was converted into an equitable estate for life, and the legal estate became fixed in the trustee. But in the contemplation of a Court of Equity, the wife was actually seized of the freehold, and was the beneficial and substantial owner ; and in the absence of any disability she could alien it, and any legal conveyance by her would have the same operation in equity upon the trust as it would have had at law upon the legal estate.

2d. That the power of sale reserved in the deed of settlement had no reference whatever to that existing under the will ; it had reference to and could only operate upon the property actually conveyed by the deed.

3d. That the power of sale given to the wife under the will was partly appendant and partly in gross ; it was appendant, as it overreached and affected the life estate of the wife, and in gross as to the estate in remainder or reversion.

---

Reid *vs.* Gordon, *et al.*

---

4th. That the conveyance of the naked legal estate for life, the donee of the power of sale under the will still holding the equitable estate, did not operate either to suspend or extinguish such power as to such life estate.

5th. That the purchaser had the right to insist upon a title that was good and defensible in a Court of Law, as well as in a Court of Equity; and before he could be compelled to accept the title, the outstanding legal estate for life must be conveyed or extinguished; and to this end the trustee would be required to join in the conveyance to the purchaser.

APPEAL from the Circuit Court for Baltimore County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BRENT, ALVEY and ROBINSON, J.

*Frederick J. Brown* and *Geo. Wm. Brown,* for the appellant.

The conveyance by Annie Barnum (now Gordon) of her life estate in the house and lot on Mount Vernon Place, by her deed of marriage settlement, extinguished her power of sale under the twelfth clause of the will for the following reasons:

The power of sale given under said clause of the will, is a power to sell in. fee; this is clear from the object of the sale, which is to invest the proceeds of sale of the entire estate for the benefit of the wife for life, and for the children and descendants of the testator in remainder; and such is the power which the said Annie in connection with her co-trustees attempted to exercise. 2 *Washb. on Real Prop.,* (313 *marg.,*) *top,* 603; 1 *Sugden on Powers,* 476.

The power vested in the wife is a power appendant. A power appendant is where a person has an estate in the land, and the estate to be created by the power is to (or may) take effect in possession during the continuance of the estate to which the power is annexed, as a power to a tenant for life in possession to make leases. A power in gross is where the

person to whom it is given has an estate in the land, but the estate to be created under or by virtue of the power, is not to take effect until after the determination of the estate to which it relates. A power simply collateral, is one given to a person who has no interest in the land, and to whom no estate is given. 4 *Kent*, 317 ; 1 *Smith's R. & P. Prop.*, 4th ed., 346, *Part* II, *tit.* 9, *ch.* 3.

This power appendant in the wife, was extinguished by the deed of marriage settlement; because the power cannot be exercised without defeating or prejudicing the interest granted, to wit : the interest granted to the husband, and the children of the marriage. The interest of the husband and children was to arise in case of sale, but the property has actually been sold, and in such a manner as to deprive the husband and children of all interest in the proceeds. Such a sale being in derogation of the rights created by the deed, is absolutely void.

"A total alienation of the estate operates as an extinguishment of a power appendant, where it cannot be exercised without defeating or prejudicing the interest granted. Thus, if a tenant for life with power to grant leases in possession, conveys away his life estate, the power is extinguished, because the donee could not exercise it without derogating from his own grant." 1 *Smith's R. & P. Prop.*, (*4th ed.*) 358, (89 *Law Lib.*, 264, *marg.*;) 1 *Sugden on Powers*, 47, (*marg.*,) *sec.* 2, (15 *Law Lib.*, 51, *marg.* 52 ;) 1 *Sugden*, 48, *Goodright vs. Cator, Doug.*, 460 ; 1 *Sugden*, 48, *Noel vs. Henley, McClell. & Yo.*, 302 ; 1 *Sugden*, 49, 50, 51, *Bringloe vs. Goodson*, 4 *Bing., N. C.*, 726 ; 1 *Sugden*, 53, 56, 58, *Long vs. Rankin* ; 1 *Sugden*, 59, 68, 73, 84, 85 ; 2 *Washb. Real Prop.*, 309, *sec.* 4 ; 4 *Kent's Comm.*, 347 ; *Burton on Real Property, secs.* 175, 177, 178, *and note.*

The rule is believed to be without an exception, that if a party holding an estate with a power appendant, makes a grant, he shall not defeat, prejudice or derogate from the grant by a subsequent exercise of the power.

Formerly it was held that a power appendant was destroyed by a mortgage, or charge upon the estate to which the power is appendant. *Vincent vs. Ennys,* 3 *Vin. Abr.,* 432, *pl.* 10 ; *Cocker vs. Ennys,* 3 *Vin. Abr.,* 432, *pl.* 10.

But since the decision of Lord MANFIELD, in *Ren vs. Buckley,* 1 *Doug.,* 292, in which the equitable principle that a mortgage is only a security, was invoked to qualify a doctrine of the Common Law, it has been held that a power appendant is not destroyed by a mortgage, security or charge, but it may be suspended, controlled or qualified thereby. *Smith's Real & Pers. Prop.,* marg., 264, (89 *Law Lib.,* 201.)

A mortgage, security, or charge on an estate to which a power is appendant, is therefore always held good, and the power remains unextinguished only so far as it can be exercised in strict subordination to the estate previously granted.

If the estate conveyed by the deed of marriage settlement be respected, it is impossible for the power under the will to be carried out.

Under the deed and will, 1st, the estate to be sold is different; 2d, the trustees are different; and 3d, the appropriation of the proceeds of the sale is different; so that if the deed stands, the power under the will is destroyed, and if the power under the will remains and is exercised, it destroys the deed. *Bringloe vs. Goodson,* 4 *Bing.,* N. S., 276.

By virtue of the deed of trust, all the property was conveyed to the trustee for the benefit of the wife, and afterwards to her husband and children in remainder, and the legal title was therefore vested in the trustee for the benefit of wife, husband and children, and although a power of sale is given to the wife, the legal title remains in the trustee and cannot be passed without his joining in the conveyance. The contract therefore by the wife without the concurrence of the trustee under the deed, and a deed executed by her would not convey a good title to the purchaser. *Ware vs. Richardson,* 3 *Md.,* 505.

The deed being a deed of bargain and sale, the legal estate remains vested in the trustee, and under the power only a trust estate can be granted.   The Statute of Uses cannot vest the estate in any bargainee not expressly named, because where the persons are altogether uncertain and the terms unknown, there can be no consideration.   *Sugden on Powers,* 160, 15 *Law Lib.,* 86; *Cornish on Uses,* 89, 3 *Law Lib.;* *Watkins on Conveyancing,* 238.

*John P. Poe* and *Wm. Pinkney White,* for the appellees.

By no fair construction of the marriage settlement can it be shown that Mrs. Gordon intended to extinguish, or, in fact, did extinguish, her previously existing undoubted power to sell the property in question.

She did not thereby *sell* her property, or any part of it, but, owning a considerable estate—real, personal and mixed— some in fee simple, some absolutely, and some (including this house and lot) for her life, she settled the whole of it upon certain trusts, reserving, however, as full and complete a power of sale over the whole or any part of it as she had before she executed the deed.

If the sale be treated as made in execution of the power under Mr. Barnum's will, then the marriage settlement does not affect it at all.

If, on the other hand, the marriage settlement be interpreted as reserving to her the same power with reference to this property as the will gave her, there can then be no objection, so far as the mere *sale* is concerned, to this exercise of the power.

In either event the sale is valid, and transfers the whole estate to the purchaser.   In the one case the marriage settlement is left entirely out of view.   In the other, it confers the very power which is executed.

How then a sale subsequent to the marriage settlement, in execution of the power which such marriage settlement reserves, can defeat the marriage settlement containing such power, it is difficult to perceive.

The sale to the appellant is not a sale within the contemplation of the marriage settlement—it is not a sale of Mrs. Gordon's life estate separate from the remainder which, under Mr. Barnum's will, belongs to his children—but it is a sale in fee simple of the whole estate in execution of her power under his will.

By her marriage settlement she conveys, in trust, the fee in what she owned in fee, and the life estate in what she held for life, reserving the power to sell, at her pleasure, the fee as to what she owned in fee, and the life estate as to what she held for her life. She makes no provision in it for the case of her selling, under the power in the Barnum will, the whole fee simple estate in the property in which she had a life estate; but the marriage settlement relates (so far as this property is concerned) exclusively to her own life estate, distinct from the estate which she did not own, but still had the power to dispose of.

Now, if in execution of the power reserved in her marriage settlement, she had sold to the appellant her life estate in the property in question for $10,000, as she undoubtedly might have done, she could have executed a valid deed to him for the life estate so sold to him, and this $10,000 would have passed to her trustee under her marriage settlement, to be invested for herself for life—then for her surviving husband, Mr. Gordon, for his life, then for her children by him, and then upon certain contingencies for her Barnum children.

If she had died the next day after making such supposed sale of her life estate, the title so bought would have ceased *eo instanti*, and her Barnum children would immediately have become entitled to the whole property.

Instead, however, of making a sale of so much of the estate as belonged absolutely to her, and the proceeds of which she had a right to dispose of as she pleased, she has undertaken to sell, under the power given to her in Mr. Barnum's will, the whole interest in the property in question. This of course converts a piece of real estate into cash; and the appel-

lant maintains that she is entitled absolutely to a certain aliquot part of this cash, to be ascertained according to the rule by which a potential dower is estimated—which aliquot part is to be deducted from the whole purchase money, and handed over to her trustee to be invested as provided in the marriage settlement. The appellees on the other hand, insist that the whole proceeds of the sale so made by her, are to be invested for her during her life, and that immediately upon her death, the whole proceeds belong to her Barnum children. The theory of the appellees, however, is in conformity with the express terms of Mr. Barnum's will.

Mrs. Gordon is to have the whole rents and profits of the property during her life. If she sells it, then the whole proceeds are to be invested for her in some other shape, for life. In other words, she is still to have a life estate in the *whole* proceeds in case of sale, precisely as she had a life estate in the *whole* property before sale. *Bisset on Estates for Life*, 213–226, (42 *Law Lib.;*) 1 *Sugden on Powers*, 56–80.

ALVEY, J., delivered the opinion of the Court.

Zenos Barnum, by the third clause of his will, devised to his wife, Annie Barnum, for life, his house and lot on Mount Vernon Place, in the city of Baltimore; and, by the fourth clause, he gave her full power and authority, at any time, to sell and convey the same, with direction that the proceeds of sale should be invested by her, in conjunction with two other trustees named in the twelfth clause of the will, for her sole and separate use during her life; and that her own receipts should be sufficient to entitle her to receive the interest and income from the investment; and further, that the purchaser of the property should not be bound to see to the application of the purchase money.

By the tenth clause of the will, the testator directed that all the property devised to his wife for life, should, after her death, be equally divided amongst his children. And, by the twelfth clause, the wife, together with F. W. Bennett and

S. H. Tagart, were constituted trustees, with power to receive the proceeds of the estate, and invest the same in trust, for the use and benefit of the testator's children. They were also authorized and empowered to sell and convey any of the testator's estate when, in their opinion, such sale might be advantageous; and, generally, to do all acts and things which in their judgment should be most conducive to the interest of such children.

A few years after the death of the testator, his widow, Annie Barnum, contemplating a second marriage, made and executed, in conjunction with her intended husband, David C. Gordon, for and in consideration of the intended marriage, and of one dollar, a deed of settlement, whereby she conveyed to S. H. Tagart, one of the trustees named in Zenos Barnum's will, all the estate and property, real, personal and mixed, of which she, the grantor, was in any manner entitled, except certain specific property other than the house and lot on Mount Vernon Place; and the trusts and powers declared were, that the grantor should, during her life, hold and enjoy the property as *fême sole*, without its being in any way subject to the control of her intended husband, or liable for his debts, with full power to sell, dispose of, convey and assign, absolutely or otherwise, all the estate and property conveyed, or any part thereof, for such price or prices, and upon such terms as she might think proper, without the assent or concurrence of either her intended husband or the trustee named in the deed; the proceeds of sale to be invested in other good security, to be held upon the same trusts, and subject to the same powers before mentioned, in reference to the property conveyed. It is also declared that the purchaser shall not be bound to see to the disposition of the purchase money. The deed contains the further limitations, as to the proceeds of sale, that they shall be held to the use and enjoyment of the intended husband for life, after the death of the wife, if he should survive her, and from and after his death, or the death of the wife, if she should survive the husband,

to the use and benefit of their children or their descendants; and in default of such descendants, then to the use and benefit of the children of the wife by her first husband, Zenos Barnum.

The marriage, in the contemplation of which the deed was executed, took place, and children have been born to the parties; and since which events, Mrs. Gordon, the devisee for life under her former husband's will, in the exercise of the power given her, has sold the house and lot on Mount Vernon Place to the appellant, in fee simple, to take effect in immediate possession, for the sum of $50,000. This sale she, together with the other two trustees named in the will, have reported to the Circuit Court for Baltimore county, as a Court of Equity, for ratification, under the Act of 1870, ch. 370. The purchaser objected to the ratification, but the Court overruled his exceptions, and ratified the sale, and it is from the order of ratification that the purchaser has appealed; and the question is, was the sale legally made, and such as will secure to the purchaser a good and sufficient title to the property?

The deed of settlement operated as a bargain and sale, and conveyed, of course, only such right and estate in the property as the bargainor had. It was not made in execution of the power of sale conferred by the will. The legal estate for life, therefore, in the house and lot on Mount Vernon Place was conveyed by the deed, and nothing more, as to that particular property. The legal estate for life devised by the will was converted into an equitable estate for life in Mrs. Gordon by the deed. The deed operating as a bargain and sale, the legal estate became fixed in the trustee; as a use upon a use is never executed by the Statute of 27 Hen. VIII., ch. 10, known as the Statute of Uses. In the case of a bargain and sale, the Statute expends its whole force in transferring the legal title to the bargainee; and the second and subsequent uses can only take effect as trusts, to be enforced in equity. *Matthews vs. Ward*, 10 *G. & J.*, 443; *Croxall vs. Shererd*, 5 *Wall.*, 268. Hence Mrs. Gordon has but an equitable life

estate under the deed, instead of the former legal estate for life under the will. But, in the contemplation of a Court of Equity, she is actually seized of the freehold, and is the beneficial and substantial owner; and, in the absence of any disability, she could alien it, and any legal conveyance by her would have the same operation in equity upon the trust, as it would have had at law upon the legal estate. 10 *Gill & John.*, 443; 5 *Wall.*, 268; *Burgess vs. Wheat, Eden.*, 226; *Boteler, vs. Allington*, 1 *Bro. Ch. Cases*, 72. The trustee holds the mere dry legal title, and his conveyance is of importance to the purchaser of the equitable title only as it may be required to give the latter a standing in a Court of Law.

. The power of sale reserved in the deed of settlement has no reference whatever to that existing under the will; it has reference to and can only operate upon the property actually conveyed by the deed. If it be exercised, the right and estate conveyed by the deed can be sold under it, and that alone. If the power under the will had been reserved, and the right and estate of the devisee in the property conveyed subject to the exercise of such power, there could be no such question raised as is presented in this case. Such power could then have been effectually exercised notwithstanding the deed. The question in this case is produced by what is supposed to be a conflict between the estate granted by the deed, and the subsequent attempt to exercise the power of sale under the will.

·Powers, it is said, are either appendant, or in gross, or altogether collateral; appendant, when the exercise of them is in the first instance to interfere with, and to a certain extent, to supersede the estate of the donee of such power; in gross, when they do not commence until the determination of the estate of the donee; and collateral, when the donee has no estate at all in 'the property which is the subject of the power. 1 *Sand. on U. & T.*, 177; 1 *Sugd. on Pow.*, 40, 41, 42.

Reid *vs* Gordon, *et al.*

In this case, the power of sale given to the wife, under the will, was partly appendant, and partly in gross; it was appendant as it overreached and affected the life estate of the wife, and in gross as to the estate in remainder or reversion.

With respect to powers, says *Mr. Sanders,* (1 *vol., U. & T.,* 179,) "so far as they are appendant, it may be considered as a principle, that the donee of a power shall not be allowed, by the exercise of such power, to defeat any charge, estate or incumbrance, which he himself had previously made or created; and therefore, if a tenant for life, having a power of leasing, previously conveys *his legal estate,* the power of leasing, *to the extent of such conveyance,* will be defeated. So, in the case mentioned of an estate being limited to A for life, with remainder to B in tail, with remainder to A in fee, with a general power of revocation reserved to A, if A by lease and release, not executed according to the forms required by the power, convey to C in fee, he cannot afterwards exercise his power as to his own life estate, and his remainder in fee; but the power will remain as to the estate tail of B."

The ground upon which a party is denied the right of exercising a power, after he has conveyed away his estate to which the power is appendant, is, that it would derogate from his grant, and operate a fraud upon his grantee. But, in this case, as we have seen, nothing passed by the deed of marriage settlement, in respect to this particular property, except the bare legal estate for life, the beneficial estate remaining in the donee of the power under the will. No fraud or injury, therefore, could be done by the exercise of the power of sale, so far as the tenant for life of the legal estate is concerned. The execution of such power was perfectly effective as to the estate in remainder or reversion, (1 *Sudg. on Pow.,* 49 to 53; *Sand. Uses & Trusts,* 182; *Long vs. Rankin,* 2 *Appendix to 2 Sugd. on Pow.,* 519; *Jones vs. Winwood,* 4 *M. & Wels.,* 653,) and the only question is, whether the conveyance of the naked legal estate for life, the donee of the power still holding the equitable estate, necessarily operates either to suspend or ex-

tinguish the power of sale under the will, as to such life estate? That such is not the operation of the conveyance in equity, we think is entirely free from doubt. On the contrary, it would seem to be plain that, in the contemplation of a Court of Equity, this power has been well executed, whatever technical difficulty may exist in the contemplation of a Court of Law, in reference to the outstanding legal estate for the life of the donee of the power. In the view of a Court of Equity, the bare outstanding legal estate for life creates no difficulty; and as that Court looks rather to the substance of things than to technical distinction, it will not treat the power as either suspended or curtailed by the mere conversion of the legal into an equitable estate. But, while this is the light in which a Court of Equity may view the matter, it is, nevertheless, the right of the purchaser to insist upon a title that is good and defensible in a Court of Law as well as in a Court of Equity; and as the exercise of the power, so far as it affects the life estate of the donee, can only have an equitable operation, before the purchaser can be compelled to accept the title, the outstanding legal estate for life must be conveyed or extinguished. This, however, can be easily done, by requiring the trustee to join in the conveyance to the purchaser. Holding the bare legal estate, in trust for the donee of the power, a Court of Equity will compel him to join in the conveyance, at the instance of such donee, in order to render perfect her execution of the power under the will. Such joining of the trustee will remove all objection founded upon the conflict between the legal estate for life, and the exercise of the power of sale under the will of Zenos Barnum.

In 2 vol. of *Chance on Powers*, sec. 3166, it is said: " Tenants for life, under settlements containing powers of sale, exchange, &c., to be exercised by them, or with their consent, sometimes mortgage their estates, or convey them in trust. It seems that whether the mortgage or conveyance comprises the reversion in fee or not, the powers may, in general, be ex-

ercised with the consent of the mortgagees or grantees and all proper parties. The forms of the mortgage or conveyance, or other circumstances, may present distinctions. So on a re-conveyance it seems that the powers revive in their original state." See, also, 1 *Sugd. on Pow.*, 74, 76, particularly the latter page.

It is insisted, however, that in the event of sale under the power in the deed, the limitations and declarations of trusts, in respect of the proceeds, are different in the deed from the limitations of trusts in respect of the proceeds of sale declared in the will. But it may be replied to this objection, that the event of a sale of this particular property, under the power in the deed, is but a bare possibility, if the sale to the appellant had never been made. The power might be exercised or not. The mere option to exercise it is certainly not a trust, the execution of which could be enforced. It is mere matter of discretion, and, therefore, not of any positive right on the part of those in whose favor the trusts of the proceeds of sale are declared. By the sale to the appellant, Mrs. Gordon has made her election not to exercise the power of sale, as to this particular property, under the deed. That power, not being a mere collateral authority, to be exercised exclusively for the benefit of others, she is at liberty to bar, release or disclaim ; and any dealing with the estate, inconsistent with the exercise of the power, determines and precludes the option to exercise it. 1 *Sugd. on Pow.*, 90–102.

As, however, it is necessary, in order to secure to the appellant a good legal title in possession, that the legal estate for life, now outstanding in a trustee, should be united with the equitable estate of the donee of the power under the will, we shall reverse the order appealed from, but without setting aside the sale; leaving the donee of the power at liberty to take the proper proceedings in equity, if it shall become necessary, to secure the joining of the trustee holding the legal estate for life, in the conveyance to the purchaser. The decree of reversal will be without prejudice to such proceeding.

The other trustees named in the will, with power under the twelfth clause to sell any part of the testator's estate, may well join in the conveyance, although the sale to the appellant appears to have been made by Mrs. Gordon under the power conferred upon her alone, by the fourth clause. They simply concur in and recommend the ratification of the sale, as having been judiciously made, looking to the rights of those interested in the proceeds of sale, after Mrs. Gordon's death. These proceeds will, of course, be invested as directed by the will, but with that the purchaser has nothing to do.

> *Order reversed and*
> *cause remanded.*

(Decided 15th February, 1872.)