(Decided 28th June, 1881.)

. SAMUEL NEVIN and Wife, and others, Heirs of MARY ANNA ADAMS *vs.* MARY E. GILLESPIE, and others, Heirs of JOHN ALEXANDER ADAMS.

*Effect of a Conveyance in fee in the year 1834, to the separate use of a Married woman with power of Disposition by her, and with Remainder to her right heirs in Default of such disposition—In what respect the Husband is Trustee for the Wife in such case, and in what not—Fraud and undue influence—Consideration—Estoppel.*

In the year 1832, M. A. A. owning a farm in fee, conveyed it to P. by a deed, in which her husband, J. A. A., united. On the same day

Nevin and Wife, *et al. vs.* Gillespie, *et al.*

P. re-conveyed the property to M. A. A., "her heirs and assigns forever," to have and to hold the same " unto the sole and separate use and benefit of the said M. A. A., with full power to the said M. A. A. to sell and convey in fee simple by any deed or deeds to be by her executed and acknowledged before any two justices of the peace of W. County, either the whole or any part," &c.; and in default of a sale, " then to the sole and separate use of the said M. A. A. for life, and after her death to the use of such person or persons, for such estate or estates, interest or interests, as she may by her last will and testament, or any instrument of writing under her· hand and seal, and attested by three witnesses, direct, limit and appoint, and default both of such appointment, will and sale, then to the use of the heirs-at-law of the said M. A. A. in fee simple." On the 27th of November, 1856, J. A. A. and wife, by deed reciting the power to sell, and professing to be in execution of that power, in which the consideration therefor was stated to be $100, conveyed said farm to K., who on the same day conveyed the same by deed for a like consideration to J. A. A. in fee. On a claim by the heirs of M. A. A., that the deed made to K. was procured from M. A. A., by the undue influence, fraud and coercion of her husband, and that the transaction was not warranted by the power contained in the deed from P. to her, and was in fraud of said power, it was HELD:

1st. That while there was some testimony tending to show that M. A. A. with some reluctance had assented to the transaction, and that there had been some strife over the matter between her and her husband, still the proof was too vague and inconclusive to justify a Court in setting the deed aside on that ground ; the case on that point resting mainly on the testimony of an old woman whose extreme age, incoherent manner of expression, and confusion of dates, rendered her testimony wholly unsafe as a guide to, or basis of a sound conclusion.

2nd. That the intent of the donor of the power conferred by the deed from P. was the great principle which governed in the construction of the power; and that intent was to be ascertained from the language used in the deed.

3rd. That by the express terms of the deed from P. to her, M. A. A., took an estate in fee, subject, however, to be divested by the execution of the power or powers of the deed.

4th. That the complainants did not take vested estates in remainder under said deed as purchasers; but they could claim only as *heirs-at-law*, of M. A. A.

5th. That as her heirs, they were estopped from making any claim against the deed to K., which she herself could not have set up.

6th. That they had no right to complain that she sold to K. for an inadequate consideration, or had conveyed to him for one that was merely nominal, when none in fact was paid.

7th. That in form it was a deed of bargain and sale, such as she was authorized under the power to make, and upon a professed consideration, the *bona fides* of which M. A. A. could not herself call in question, nor could the complainants who represented her and claimed as her heirs-at-law.

8th. That although at the date of the deed of settlement, a married woman could not hold property to her sole and separate use, yet at that date, when property was conveyed to a woman to her sole and separate use, equity stepped in and considered the husband as trustee for the wife to support her estate.

9th. That by force of the decision in *Ware vs. Richardson*, 3 *Md.*, 505, and the principle on which it proceeded, the husband might have been regarded as trustee for the wife, so far as her interest in the estate, which was sole and separate, was concerned. But the husband would not be regarded as trustee in her stead for any of the purposes in the deed which the wife could hold and discharge. He did not succeed to the fee or the powers of appointment which passed by the deed to her.

10th. That she could take the fee and the powers, though she could not hold to her separate use.

11th. That she did take the fee, but in trust for the purposes mentioned in the deed; and because her individual interest required the interposition of a trustee for her, it did not disrobe her of the title and trusts she could hold.

12th. That holding the fee by express terms under the conveyance, she occupied a position different from that occupied by the married woman in *Ware vs. Richardson*, and was not excluded by force of that decision from the fee which she did take.

13th. That the heirs of J. A. A. were entitled to the property.

Nevin and Wife, *et al. vs.* Gillespie, *et al.*

APPEAL from the Circuit Court for Washington County, in Equity.

The case is stated in the opinion of the Court. The auditor's account, from the ratification of which this appeal is taken, distributed the proceeds of the sale of the property in question, after the payment of costs and expenses, and claims proven, among the heirs of John Alexander Adams.

The cause was argued before BARTOL, C. J., BOWIE, MILLER, ALVEY and IRVING, J.

*Tryon Hughes Edwards,* and *A. K. Syester,* for the appellants.

*George W. Smith,* and *Henry Kyd Douglas,* for the appellees.

IRVING, J., delivered the opinion of the Court.

The real estate over which this controversy has arisen, has been sold under a decree of the Circuit Court for Washington County, by the consent of all the parties to the suit; and the questions for decision are presented by exceptions to the special auditor's report filed in the cause, which have been overruled by a *pro forma* order, and the audit in the particulars excepted to ratified, from which order this appeal has been taken.

Both appellants and appellees claim the fund; so the question is one of title to the real estate sold; and its solution depends upon the proper construction of several deeds, and whether the conveyance to the grantor of appellees' intestate John Alexander Adams, was made in the due and *bona fide* execution of a power by Mary Anna Adams, the appellants' intestate.

In 1828, Mary Anna Adams was the widow of Archibald Ritchie, and entitled by his will to an absolute estate

in fee to the real estate now in controversy.  Sometime between 1828 and 1832, she was married to Rev. John Alexander Adams.   On the 12th day of September, 1832, they executed to Daniel Piper, a deed in fee for the land in dispute.   On the same day, Daniel Piper re-conveyed the land to Mrs. Adams, (one of the grantors.)   In the granting clause of the deed, the conveyance is to " Mary Anna Adams, her heirs and assigns forever."

The *habendum* clause of the deed, is in the following language, viz., " To have and to hold the said farm called ' West Farm,' with every the appurtenances, unto the sole and separate use and benefit of the said Mary Anna Adams, with full power to the said Mary Anna Adams, to sell and convey in fee simple, by any deed or deeds to be by her executed, and acknowledged before any two justices of the peace of Washington County, either the whole or any part of the said real estate, called the ' West Farm,' and in default of a sale of the said real estate, or any part thereof, by the said Mary Anna Adams, then to the separate use of the said Mary Anna Adams, for life, and after her death, to the use of such person or persons, for such estate or estates, interest or interests, as she may by her last will and testament, or any instrument of writing under her hand and seal, and attested by three witnesses, direct, limit and appoint, and in default both of such appointment, will and sale, then to the use of the heirs-at-law of the said Mary Anna Adams in fee simple. ' Provided, nevertheless, and it is the true intent and meaning of these presents, and of the parties thereto, that the said estate called the ' West Farm,' is to remain charged and liable, both at law and equity, to the said John Alexander Adams, for all the debts of the late Archibald Ritchie, deceased, either already paid, or hereafter to be paid, and satisfied by him, and also, that the said estate is to remain charged and liable aforesaid, to the said John Alexander Adams, for all debts or sums of money already con-

tracted or paid, or which hereafter may be contracted or paid hereafter by him, for or on account of the said Mary Anna Adams, or in defending her estate or rights in the premises."

On the 27th day of November, 1856, John Alexander Adams and wife, by deed, reciting the power to sell, and professing to be in execution of that power, in which the consideration therefor is stated to be one hundred dollars, conveyed the same farm or estate to Urias Knode, who on the same day conveyed the same by deed for a like consideration to John Alexander Adams in fee. Both these deeds were executed before two justices of the peace, and were duly recorded. These deeds, on their face, put the title to the estate in John Alexander Adams, who having died intestate, the appellees claim the estate as his heirs-at-law. The appellants claim the estate as the heirs-at-law of Mrs. Adams, and contend that the conveyance to Knode, through which John Alexander Adams took title, is invalid for two reasons, viz., 1st. Because the transaction was not warranted by the power reserved to Mrs. Adams in the deed of settlement, which, for convenience may be called the Piper deed, but was in fraud of the power conferred by that deed. 2nd. That the Knode deed was procured from Mrs. Adams by the undue influence, fraud and coercion of her husband, John Alexander Adams. This proceeding therefore is substantially a proceeding to set aside those deeds for the reasons stated.

After the most mature reflection upon the proofs submitted, and due consideration of the deeds through which the settlement was effected, and the title finally passed to John Alexander Adams, we are unable to adopt the view, so ably and exhaustively presented by appellants' counsel. In respect to the proof upon which we are asked to say that the Knode deed was procured from Mrs. Adams by the fraud, undue influence and coercion of her husband, we may say, that whilst there is some testimony tending

to show that Mrs. Adams with some reluctance had assented to the conveyance of the whole property by the Knode deed; and that there had been some strife over the matter between them; still the proof is too vague and inconclusive to justify a Court in setting the deed aside on that ground. The case on that point rests mainly upon the testimony of the old woman Hannah, whose extreme age, incoherent manner of expression, and confusion of dates, renders her testimony wholly unsafe as a guide to, or basis of, a sound conclusion. We are unable therefore to find sufficient and reliable proof in the record to set aside the Knode deed because of fraud, undue influence or coercion of Mr. Adams in its procurement. We now proceed to the other inquiry, whether the Knode deed was warranted by the terms of the settlement, and was made in the due and proper execution of the power conferred on Mrs. Adams by it.

When Mr. and Mrs. Adams conveyed the land to Piper, Mrs. Adams was the undeniable and absolute owner in fee, of the land. Mr. Piper re-conveyed the land to her and her heirs and assigns, clothed with certain trusts or subject to certain powers particularly set out in the *haben-dum* clause of the deed. In changing the form of the holding, and putting it in the form of a settlement, it is plain that the main object was to put the property beyond the control of her husband, or possible liability at any time and in any way for his debts. It was to enable her with respect to it, to act independently of him and without his concurrence, if she so desired. This was certainly accomplished by the settlement, for she could execute any of the powers of it without the concurrence of her husband. 1 *Sugden on Powers, ch.* 4, *secs.* 4, 5 *and* 6. The title which was conveyed was the fee, whilst the individual and personal interest which she took, was to her sole and separate use, so that the full extent of her *title* remains to be decided as an important preliminary to the

question whether the conveyance, to Knode, in professed execution of the power of the settlement " to sell and convey," can be impeached by these appellants.

" The intent of the donor of the power is the great principle which governs in such cases ;" 4 *Kent,* 345 ; *Lowry vs. Tiernan,* 2 *H. & G.,* 34 ; and we must ascertain that intent from the language used in the deed of settlement creating the estate and confirming the power.

By the express terms of the deed from Piper to her, Mrs. Adams took an estate in fee, subject however to be divested by the execution of the power or powers of the deed. *Doe vs. Martin,* 1 *Term Rep.,* 67 ; 4 *Kent's Commentaries,* 324, 325. Formerly it was held that the power in such case was absorbed by the fee ; but the weight of authority establishes, that the power is not extinguished, but co-exists with and qualifies the fee. 4 *Kent's Com.,* 349, and authorities there cited.

The contention of the appellants is, that they take as purchasers under the deed of settlement; that they take with remainders in fee, which could only be divested by the proper exercise by Mrs. Adams, of some one of the powers conferred on her by deed of settlement. Among other authorities in support of their position, they cite *Doe vs. Martin,* 4 *T. R.,* 39, and *Cunningham vs. Moody,* 1 *Vesey,* 174. These authorities would sustain that contention beyond doubt, if the limitation over in default of the execution of any of the powers of the deed had been to them as strangers, and not to heirs-at-law of the first taker. In the case at bar, the limitation over is to " the *heirs-at-law*" of Mrs. Adams. If there were no other language than that contained in the *habendum* clause, and the estate had in words been limited to Mrs. Adams for life only in the granting clause also, according to the rule laid down by *Mr. Sugden on Powers, vol.* 2, *p.* 23, *sec.* 5, by the rule in *Shelley's Case,* the two estates would coalesce and give Mrs. Adams the fee. In fact, however, the *grant* is to her,

" her heirs and assigns forever;" and the *habendum* only
declares the trust upon which she takes.  According to
the case of *Doe and Martin*, and *Cunningham and Moody*.
Mrs. Adams took the fee executed in herself, subject to be
divested only in the way already indicated.  These appel-
lants, therefore, do not take vested estates in remainder
under the Piper deed, as purchasers ; but they can claim
only as *heirs-at-law* of Mrs. Adams, and had Mrs. Adams
died without attempting to execute any of the powers of
the settlement, they would have come into possession, not
as purchasers, as remaindermen under the Piper deed, but
simply as her heirs-at-law.  Independent of this construc-
tion resulting from the application of the rules of law to
the deed under consideration, and as throwing light upon
the intention of the donor or grantor of the power in the
deed of settlement, it is to be observed that when the
power to sell and convey, is in express terms, given to Mrs.
Adams, no restriction is put upon her as to the price for
which she is to sell, and no restriction or limitation is put
upon her, with respect to the application or disposition of
the proceeds of such sale.  She could have re-invested the
proceeds in other real estate in her own name, which would
have been subject to none of the limitations put upon the
estate which she sold.  She could have given the proceeds
at once to her husband, and no one could, by virtue of the
settlement, have complained.  It is clear that the appel-
lants, as heirs-at-law of Mrs. Adams, are estopped from
making any claim against the deed to Knode, which Mrs.
Adams herself could not have set up.  She could have
complained, and her complaint would have been heard in
a Court of equity, if she had established that the deed
was procured by fraud or coercion ; and if the testi-
mony in this cause, established satisfactorily that the deed
was procured from her in that way, the appellants would
be entitled to a reversal of the order appealed from.  If
they were claiming as strangers, to whom the fee in

remainder had been given by the settlement, they could attack the *bona fides* of the execution of the power by the conveyance to Knode ; but claiming as they do, and must, as heirs-at-law of Mrs. Adams, they have no right to complain that Mrs. Adams sold to Knode, for an inadequate consideration, or had conveyed to him for one that was merely nominal, when none in fact was paid. In form, it is a deed of bargain and sale, such as she was authorized under the power to make, and upon a professed consideration, the *bona fides* of which Mrs. Adams could not herself call in question, nor can the appellants who represent her, and claim as her heirs-at-law. It is true, that this deed of settlement was made in 1832, at which time a married woman could not hold property to her sole and separate use, as she can now by virtue of statutes subsequently passed. At that date, when property was conveyed to a woman, to her sole and separate use, equity stepped in and considered the husband as trustee for the wife to support her estate. Such was the decision in *Ware vs. Richardson,* 3 *Md.,* 505. By force of that decision, and the principle on which it proceeded, the husband might have been regarded as trustee for the wife, so far as her interest in the estate, which was sole and separate, was concerned. But the husband would not be regarded as trustee in her stead, for any of the purposes in the deed, or trusts of the deed which the wife could hold and discharge. He did not succeed to the fee or the powers of appointment which passed by the deed to her. She could take the fee and the powers, though she could not hold to her sole and separate use. She did take the fee, but in trust for the purposes mentioned in the deed ; and because her individual interest required the interposition of a trustee for her, it did not disrobe her of the title and trusts she could hold. Holding the fee by express terms under the conveyance, she occupies a position different from that occupied by the married woman in *Ware vs. Richardson,* or

any other case which we have been able to find, and is not excluded by force of that decision from the fee which she did take. It follows from what has been said, that we regard the distribution made by the auditor and confirmed by the Court below as correct, and the order to that extent will be affirmed.

*Affirmed, and cause remanded.*

(Decided 28th June, 1881.)

MILLER, J., delivered the following dissenting opinion :

I agree that there is not sufficient evidence in this record, to justify a Court of equity in vacating, upon the ground of actual fraud in fact, the deeds of November, 1856, by which the real estate in controversy, was conveyed by Adams and wife to Knode, and by the latter to Adams, the husband, in fee. But I am further of opinion, (and in that I understand, all the Judges who heard the case, to concur) that these conveyances were not a valid execution of the power of sale contained in the deed from Piper, of September, 1832, and that being so, I am clearly of opinion, that upon her death, the heirs of Mrs. Adams took the estate under this latter deed. The state of the title, as I understand the case, is as follows :

Archibald Ritchie, who died in 1828, left a will by which he devised this property to his wife in fee simple. By this will, his widow was vested with an unqualified and absolute estate in this land. She could do with it as she pleased, so long as she remained unmarried. But she afterwards married Mr. Adams, and by this marriage, her real estate at that time, became subject to the *curtesy* interest of her husband, but as there was no issue of this marriage born alive, the land upon her death, intestate, would have *descended* to her heirs-at-law, if there had been no intervening conveyances thereof. After this marriage, she could not sell and convey the land unless

her husband joined in the deed, nor, as the law then stood, could she devise it, except by a will executed with his consent. Let us now see what conveyances were made, with what purpose, and with what effect. In September, 1832, Adams and wife united in a deed, conveying the land to Daniel Piper in fee, for the nominal consideration of five dollars, and on the same day Piper executed a conveyance for the same nominal consideration, by which he conveyed it to Mrs. Adams in fee, "for her sole and separate use and benefit," with full power " to *sell*, and convey the same in fee simple by deed," "and in default of a *sale* of the said real estate, or any part thereof, by the said Mary Anna Adams, then to the separate use of the said Mary Anna Adams *for life*, and after her death, to the use of such person or persons, for such estate or estates, interest or interests, as she may by her last will, or any instrument of writing under her hand and seal, and attested by three witnesses, limit and appoint, and in default both of such appointment, will and sale, then to the use of the heirs-at-law of the said Mary Anna Adams, in fee simple." The powers here enumerated and granted, are clearly the power to sell, and the power of appointment by deed or will. By these powers she was vested with the same control over her property, as if she had remained unmarried, and the whole purpose of this deed, as it appears to me, was to create these powers, and in default of their execution to give the property to her heirs in fee. It was needed for no other purpose, and could have been intended to accomplish no other object, as she already possessed the property in fee under the will of her first husband. She made no appointment by deed or will, and if the deed to Knode of 1856, was not a valid execution of the power of *sale*, what prevents her heirs from taking under the Piper deeds. Nothing, so far as I can see, unless the *Rule in Shelley's Case* is to be applied. But I take it to be clear upon the authority of *Ware vs.*

*Richardson*, 3 *Md.*, 505, and the cases there referred to, that where an estate is limited either by deed or will, to the *sole and separate use* of a married woman for life, and after her death, to the use of her heirs in fee, she takes but an equitable life estate, while her heirs take a legal estate, and this prevents the operation of the rule ; for it is a well recognized exception to the rule, that where the estate limited to the ancestor, is an equitable or trust estate, and that to the heirs an executed use or legal estate, the two will not coalesce in the ancestor, and so if the estate for life be a legal, and that to' the heirs an equitable estate, in such cases, the rule does not apply. It is not necessary that a trustee should be named in the conveyance, to make the life estate an equitable one, for, as was said in *Ware vs. Richardson*, 3 *Md.*, 550, "it is now settled, that where bequests or conveyances are made to married women for their separate use, without the nomination of trustees, the husbands in equity will be considered as trustees for their wives, and will be required to comply with the intention of the donor." For these reasons, I am constrained to dissent from the decision of my Brothers, to the effect that the heirs of Mrs. Adams have no title to this property, or are estopped from contending that the power of sale was not validly executed by the deeds of 1856.