R. BENNETT DARNALL, Trustee, *v.* JOSEPH P. CONNOR, Register of Wills.

[No. 35, April Term, 1931.]

*Decided July 7th, 1931.*

The cause was argued before BOND, C. J., URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Arthur W. Machen, Jr.,* with whom were *Armstrong, Machen & Allen* on the brief, for the appellant.

*Willis R. Jones, Deputy Attorney General,* with whom was *Wm. Preston Lane, Attorney General,* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The question to be decided is whether the collateral inheritance tax, provided for by section 124 of article 81 of the Code (as amended by Acts 1927, ch. 242, sec. 1), is collectible upon legacies made under this arrangement. A woman owning real and personal property had during her lifetime placed it in trust by deed, giving the trustee the management of the property for her life, but reserving to herself the income and the power of testamentary disposition, with a limitation over to her heirs generally in default of such disposition; and she thereafter executed a will giving the legacies in question. By agreement of the parties, this question was submitted to the trial court without a jury, upon a case stated on the facts. Code art. 75, secs. 56 and 133. And, the decision having been that there was a liability for the tax, the defendant appeals. No question of parties or procedure is raised.

Sallie C. Brown, four years before her death in 1928, conveyed real and personal property to R. Bennett Darnall, in trust, "to collect the interest, income, rents and profits therefrom; to pay all taxes, repairs and charges of every kind, including the expenses of administering this trust, and a

commission to the trustee equal to the commission allowed trustees for similar services by the Circuit Court of Baltimore City, and thereafter to pay the net income from time to time to or for the account of the party of the first part, in such installments as the party of the second part, or his successor, may deem expedient and wise." The grantor reserved to herself the right to dispose of the whole or any part of the estate granted, by her will, and provided that, should she fail to do so, the trustee should divide the property, pay it over, and transfer it to her heirs. And the trustee was given authority and power to change the investments, and sell, lease, mortgage, or convey any of the property, upon such terms as he might think proper and expedient. By will duly executed, the grantor subsequently gave the legacies to collaterals here considered, expressly stating that it was in exercise of the power of disposition which she had reserved.

The tax is laid in broad terms. It is upon legacies to collaterals of "estates, real, personal and mixed, money, public and private securities for money of every kind passing from any person who may die seized and possessed thereof, being in this State, or any part of such estate or estates, money or securities, or interest therein, transferred by deed, will, grant, bargain, gift or sale, made or intended to take effect in possession after the death of the grantor, bargainor, devisor or donor to any person or persons, bodies corporate, in trust or otherwise." Code, art. 81, secs. 124 (as amended Acts 1927, ch. 242). And the comprehensive purpose is obvious. In the preamble to the original enactment the tax was described comprehensively as a tax on "collateral inheritances, distributive shares and legacies, to aid in paying the debts of the state." Acts 1844, ch. 237. And this court has recently said that: "The intention of the Legislature in this case is plain that they proposed to exact from strangers or collateral heirs five per cent. of the value of what is distributed to them, as a premium for the privilege granted by the State of receiving it, and which they are to become entitled to after the death of the person through whose bounty they are to receive it. This being true, no device, whether intended for

that purpose or not, should be sanctioned which would deprive the state of the tax which it exacts." *Lilly v. State,* 156 Md. 94, 100, 143 A. 661, 664. "The tax is imposed upon the clear value of all estates passing by will or otherwise, at the time it is transferred and received by the collateral beneficiary." *Fisher v. State,* 106 Md. 104, 121, 66 A. 661, 663. The tax is, however, only upon inheritances, or successions to property at death, and accordingly the statute describes the property as that of which the grantor dies seized and possessed, and the transfer of which is made or intended to take effect in possession at the death. And the question argued arises out of the use of these particular words of description.

About the second part of the description, and the question whether the transfer to the legatees was made or intended to take effect in possession upon the death, there is little difficulty in the case. The transfer was made by will, taking effect, and giving possession, only upon death. The legatees have nothing except under the will. The rule that the exercise of a power of disposition relates back and dates from a previous deed creating the power does not affect the time of taking here. Never a rule for all purposes, it is commonly denied application under inheritance tax statutes. *Fisher v. State,* 106 Md. 104, 121, 66 A. 661; *Chanler v. Kelsey,* 205 U. S. 466, 473, 474, 27 S. Ct. 550, 51 L. Ed. 882; 2 *Sugden, Powers* (3d Ed.), 18; *Saltonstall v. Saltonstall,* 276 U. S. 271, 48 S. Ct. 225, 72 L. Ed. 565; *Bullen v. Wisconsin,* 240 U. S. 625, 36 S. Ct. 473, 60 L. Ed. 830; *Crocker v. Shaw,* 174 Mass. 266, 54 N. E. 549; *Gleason & Otis, Inheritance Taxation* (3d Ed), 172. But see *Prince de Bearn v. Winans,* 111 Md. 434, 74 A. 626. And, in the second place, the power of testamentary disposition here was not created by the previous deed; it was reserved from that deed. The grantor in the deed and the subsequent testator were one and the same person. There was no donation of the power, no donor and no donee; and, in disposing of the property beyond her life, by her will, she was exercising her own original power as owner, with which she had never parted, and

214

which, therefore, did not derive from the deed. The language used is that of a power reserved and given, but in strict common-law terminology what is here called a reservation is an exception from the grant. "The expressions 'reserve' and 'reservation' have been applied in a somewhat untechnical sense, in connection with a clause in a conveyance by which the grantor retains a power of disposition over the land conveyed, * * * and perhaps in other cases of stipulations in behalf of the grantor. Such cases evidently do not fall within the common-law definitions of a reservation, but the use of the expression in these connections is highly convenient, and appears, in the ordinary case, to be free from objection." 2 *Tiffany, Real Property*, sec. 436. See *Dawson v. Western Maryland R. Co.*, 107 Md. 70, 92, 68 A. 301. The grantor made by her will her only disposition of title after her death, and the legatees take possession under the will only after the death; and we see no escape from the conclusion that the transfer was made or intended to take effect in possession after the death, in the language of the statute.

The chief ground of contention in the case, then, is the effect of the use of the words "dies seized and possessed," in describing the property subject of the transfer taxed. What is the effect of those words in the statute when the original owner, and present testatrix, had previously conveyed the property in trust for management during her life and distribution at the end of her life? The defendant urges that the rule of strict construction applies to tax statutes (*Downes v. Safe Dep. & Tr. Co.*, 157 Md. 87, 96, 145 A. 350; *Gould v. Gould*, 245 U. S. 151, 153, 38 S. Ct. 53, 62 L. Ed. 211; *United States v. Merriam*, 263 U. S. 179, 187, 44 S. Ct. 69, 68 L. Ed. 240; *May v. Heiner*, 281 U. S. 238, 50 S. Ct. 286, 74 L. Ed. 826); and contends that, after the execution of the trust deed, the trustee named in it was, upon strict construction of the words, the only one answering the description of seized and possessed of the property. Exactly that contention was made and rejected in *Smith v. State*, 134 Md. 473, 478, 107 A. 255. The words "seized and possessed" are, in modern law, used with such varied meanings that perhaps it

might be questioned whether any could with certainty be declared the single, correct meanings for strict construction. Seisin has been used frequently to describe the holding of a *cestui que trust* under a deed. 2 *Tiffany, Real Property,* sec. 392; 1 *Leake, Property in Land,* 126; 12 *Law Quarterly Review,* 239, 247. The trustee under such a deed is, on the other hand, said not to have seisin for the purposes of dower. *McCauley v. Grimes,* 2 G. & J. 318; *Cowman v. Hall,* 3 G. & J. 398. And see the use of the word in *Reid v. Gordon,* 35 Md. 174, 184, and *Matthews v. Ward,* 10 G. & J. 443, 453. And as to possession the Supreme Court of the United States has remarked that "both in common speech and in legal terminology, there is no word more ambiguous in its meaning than possession." *Nat. Safe Deposit Co. v. Stead,* 232 U. S. 58, 67, 34 S. Ct. 209, 212, 58 L. Ed. 504; *Pollock & Wright, Possession,* 6, 47, 50. But passing that as a possible difficulty, it is to be borne in mind, as this court and others have frequently pointed out, that the rule of strict construction is a rule for construction of a whole statute rather than of a few words, that it is not a complete, all-sufficient rule for ascertaining a legislative intention, and that commonly statutes subject to the rule, even penal statutes, are found to have intentions at variance with some of the words used. "We are not unmindful," said the Supreme Court, "that penal laws are to be construed strictly. It is said that this rule is almost as old as construction itself. But whenever invoked it comes attended with qualifications and other rules no less important. It is by the light which each contributes that the judgment of the court is to be made up." *United States v. Hartwell,* 6 Wall. 385, 395, 18 L. Ed. 830; *Maxwell, Interpretation of Statutes* (7th Ed.), ch. 10; *Endlich, Interpretation of Statutes,* secs. 329 and 337; *Gleason & Otis, Inheritance Taxation* (3d Ed.), 51. And so this court has said, quoting, among several other authorities, the statement of 1 *Kent, Commentaries* (6th Ed.), 467, that, "though penal statutes are said to be construed strictly, yet the courts are bound to give effect to their plain and obvious meaning, and not narrow the construction. They must

search out and follow the true intent of the lawgiver." *Parkinson v. State,* 14 Md. 184, 195. And as to tax statutes, too, the Supreme Court has repeated what has often been said by other courts, that "it may be conceded that no tax can be levied without express authority of law, but the statutes are to receive a reasonable construction with a view to carrying out their purpose and intent." *Scottish Union Ins. Co. v. Bowland,* 196 U. S. 611, 629, 25 S. Ct. 345, 351, 49 L. Ed. 619; *In re Detroit & Windsor Ferry Co.,* 227 Mich. 143, 146, 198 N. W. 725; *Curtis v. Corbin,* 93 Conn. 648, 107 A. 506;; *State v. Bazille,* 97 Minn. 11, 14, 106 N. W. 93; *In re Fulham's Estate,* 96 Vt. 308, 314, 119 A. 433; *Crescent Co. v. South Carolina Tax Commission,* 129 S. C. 480, 492, 124 S. E. 761. And in Maryland, as elsewhere, in earlier cases, considerations such as a known general purpose of a statute have led the court to find and give effect to legislative intentions in tax or penal statutes, not entirely conforming to words used. *Baltimore v. Balto. & O. R. Co.,* 6 Gill. 288, 297; *Buchanan v. Commrs. of Talbot County,* 47 Md. 286; *Roland Park Co. v. State,* 80 Md. 448, 31 A. 298; *State v. Archer,* 73 Md. 44, 20 A. 172; *House v. House,* 5 H. & J. 125. The whole rule for ascertaining the effect of a statute is still that the plain intention of the Legislature must prevail, however that plain intention is made to appear.

To repeat, this court has already determined that "the intention of the Legislature in this case is plain that they proposed to exact from strangers or collateral heirs five per cent. of the value of what is distributed to them, as a premium for the privilege granted by the State of receiving it, and which they are to become entitled to after the death of the person through whose bounty they are to receive it." *Lilly v. State,* 156 Md. 94, 100, 143 A. 661, 664. And in Maryland, as elsewhere, the inquiry whether a particular gift or legacy is within those affected by the statute has not stopped with the mere words "seized and possessed" by the decedent at death. On the contrary, the problem has usually been to determine whether, notwithstanding a grant *inter vivos* of an intervening title, as here, giving another seisin and possession of rec-

ord during the life of the grantor, there has been such a continuation of ownership in the grantor as to render the transfer at death one from him when seized and possessed within the meaning of the statute. Such were the questions in the three recent Maryland cases of *Smith v. State,* 134 Md. 473, 107 A. 255, 257; *Lilly v. State,* 156 Md. 94, 143 A. 661; and *Downes v. Safe Dep. & Tr. Co.,* 157 Md. 87, 145 A. 350; as well as in the earlier one of *Fisher v. State,* 106 Md. 104, 66 A. 661. In all those cases, as also in this case, there had been conveyances of a legal title *inter vivos* to trustees, and in the three earlier cases reservations of powers of further disposition; and the question determined in each was, nevertheless, whether it should be held that the grantor was within the intent of the statute still seized and possessed of the property at the time of death. In the first three cases it was held that the grantor was so seized and possessed, and in the last case it was determined that the grantor was not. From incidents of the arrangement in each case it was determined whether the statute did or did not apply.

In *Smith v. State,* 134 Md. 473, 478, 107 A. 255, 257, the court said: "It is urged that inasmuch as Mrs. Dickson was not seized and possessed of the property at the time of her death, but had conveyed it in 1915, the section of the Code does not apply. To give effect to this contention would be to point out an easy way of evading the intent and plain provision of the statute and would ignore entirely the words in the statute: 'transferred by deed, will, grant, bargain, gift or sale, made or intended to take effect, in possession after the death of the grantor, bargainor, devisor or donor.' * * * Upon careful consideration of all these authorities and the examination of a number of others, this court deems it clear that the purpose of Mrs. Dickson was to retain a beneficial interest in herself throughout her life, disposing of it after her life by means of the reserved power of disposition, and that so far as the beneficiaries, other than herself, were concerned, it was not intended to take effect until after her death, and it therefore falls directly within the provisions of the Code, art. 81, sec. 120."

From the opinion of the court in the case of *Downes v. Safe Dep. & Tr. Co., supra,* the appellant concludes that a grantor in a deed of trust is never seized and possessed of the property within the meaning of the statute, unless there is a right of revocation reserved in the deed. The court in that case emphasized the lack of a power of revocation as one of the incidents distinguishing the case from the previous ones, and found this incident, where it existed, an important one, tending to render the grantor still in the position of one seized and possessed of the property within the statute. And a conveyance which may be revoked seems clearly something less than a complete parting with property. But it was not held that this was the one decisive incident in such inquiries. In *Smith v. State, supra,* it was not regarded as decisive. In other jurisdictions the reservation of a right of revocation is viewed differently, but in none, so far as we have found, has the existence of such a reservation been viewed as the single determining incident. See cases reviewed in notes, 49 *A. L. R.* 867, 874, 875, 878, and 880, 67 A. L. R. 1248. On the contrary, so far as single incidents have been cited as decisive, reservations until death of the beneficial ownership and the right to give title beyond death have been the features so regarded. *Bullen v. Wisconsin,* 240 U. S. 625, 36 S. Ct. 473, 60 L. Ed. 830; *Saltonstall v. Saltonstall,* 276 U. S. 260, 271, 48 S. Ct. 225, 72 L. Ed. 565; *Reish v. Commonwealth,* 106 Pa. 521; *People v. Moir,* 207 Ill. 180, 69 N. E. 905; *Crocker v. Shaw,* 174 Mass. 266, 54 N. E. 549; *Coolidge v. Commissioner,* 268 Mass. 443, 167 N. E. 757. A power of revocation, so long as it continues unexercised, has no more effect than any other power has to diminish or limit the legal quantity or character of the trustee's holding. Other powers to be exercised before the expiration of the estate granted, and equally destructive of it, such as powers to sell, do not operate as limitations on the estates conveyed, and are without effect on the legal seisin and possession. *Guyer v. Maynard,* 6 G. & J. 420, 423; *Armstrong v. Kerns,* 61 Md. 364, 368. And, as is pointed out by the authorities on the subject, every such power is a power of revocation and new appointment. 1

*Tiffany, Real Property,* sec. 316; 4 *Kent, Commentaries,* 315; *Sugden, Powers* (8th Ed.), ch. 9, sec. 4.

In the present case, then, the original grantor in the deed, the beneficiary under it, and the testatrix giving ownership beyond, were only one and the same person. She continued, after the deed as before it, to retain the benefits of ownership during life, and the right of disposition beyond, with a provision that, in default of such further disposition by will, the property should pass to her heirs, just as it would pass in case of intestacy irrespective of the deed. Code, art. 46, sec. 1. The true situation is that by the deed the grantor merely split off and made a record title of one of many incidents of ownership, retaining the greater number, including that of the right to devise and bequeath. The property was still hers to give at death. What she had conveyed to the trustee by the recorded deed was little more than the right or burden of management for her during life, for which he was to be paid a commission. The legatees took from her at death; and took from her that part of ownership with which she had not previously parted. We have pointed out that they did not take under the deed she had made, for the deed did not give power over transmission of title beyond life. The decedent transferred by her will what was then hers to transfer; and we agree that the ownership which she had in fact retained was that which the statute intended to include in its description of the property subject to tax upon transfer at death.

This conclusion is not at variance with the decisions in the cases of *Prince de Bearn v. Winans,* 111 Md. 434, 74 A. 626, and *Downes v. Safe Dep. & Tr. Co.,* 157 Md. 87, 145 A. 350. In the former of those cases the grantor in the deed parted at once, upon conveyance, with all incidents of ownership whatever, retaining neither benefits for his life nor power of disposition beyond. The benefits for life were given another, and the power to make further disposition was also parted with, and left to be completed by that other. There is no conflict in the decision on those facts with the present holding that the original grantor, having reserved to herself the power to dispose by will, was at death, for the first time, exercising

one of the rights of original ownership not included in the conveyance, and not affected by it. In the case of *Downes v. Safe Dep. & Tr. Co., supra,* too, the grantor, at the time of making the deed *inter vivos,* parted with the right of disposition beyond, having fixed that disposition then irrevocably. The case was one in which an owner, during her life, had parted with all ownership except that she reserved the income for life. As for the transfer of ownership after her death, with which the statute is concerned, she had made it by her deed during life, having created then a remainder vesting in interest; and thereafter up to the time of her death she had nothing to pass. It is agreed, in the majority of cases, we believe, that such a transfer is not subject to an inheritance tax, because it lacks the essentials of inheritance or transfer at death.

There was raised in the lower court a question whether money paid or released by the legatees to settle a threatened contest of the will was money received by them, subject to the tax. On appeal the point was not pressed, and it will be held for argument in another case, if and when one shall arise.

*Judgment affirmed, with costs to the appellee.*

---

Parke, J., filed a dissenting opinion as follows:

For the purpose of emphasis, and to avoid unnecessary explanatory comment, section 124 of article 81 will be repeated, with the more significant terms italicized:

"124. *All* estates real, personal and mixed, money, public and private securities for money of every kind, *passing from* any person who may *die seized and possessed* thereof, being in this State, or any part of such estate or estates, money or securities, or interest therein, *transferred* by deed, will, grant, bargain, gift or sale, *made or intended to take effect in possession after the death* of the grantor, bargainor, devisor or donor to any person or persons, bodies corporate, in trust or otherwise, other than to or for the use of the father, mother, husband, wife, children and lineal *descendants* of the grantor,

bargainor or testator, donor or intestate shall be subject to a tax of five per centum in every hundred dollars of the clear value of such estate, money or securities; and all executors, administrators, trustees and other persons making distribution, shall only be discharged from liability for the amount of such tax, the payment of which they be charged with, by paying the same for the use of this state, as hereinafter directed; provided, that no estate which may be valued at less sum than five hundred dollars shall be subject to the tax imposed by this section." Code, vol. 2, art. 81, sec. 124, as amended by chapter 242 of Acts of 1927. Compare Acts 1929, ch. 226, sec. 105, Code, Supp. 1929, art. 81, sec. 124.

It will be observed that this section defined by exclusion. General and comprehensive terms are first employed, and then certain classes of persons and of property are withdrawn from the operation of the law, whose origin and history may be found and followed in chapter 237 of the Acts of 1844; Code of 1860, art. 81, sec. 124; Acts of 1864, ch. 200; Acts 1874, ch. 483, sec. 113; Code of 1878, art. 11, sec. 104; Acts of 1880, ch. 444; Code of 1888, art. 81, sec. 102; Code of 1904, art. 81, sec. 117; Code of 1924, vol. 2, art. 81, sec. 124, as amended by chapter 242 of Acts of 1927. While there have been a few changes in the language of the statute as first enacted in the Acts of 1844, the changes are not material to this discussion, except in the dropping of "or enjoyment" from the clause "made or intended to take effect in possession or enjoyment" of the original act. See Code of 1860, art. 81, sec. 124, and Code of 1888, art. 81, sec. 102. The language of the law in which the tax originated, together with the subsequent amendatory legislation, makes it clear that the tax created is imposed upon any estate or interest in real or personal property, within the State of Maryland, of which either (first) the party has died seized or possessed, and of which he has either died intestate or has made testamentary disposition, so that, in either contingency, the estate or interest shall pass from the intestate or testator to collaterals within the definition of the law; or (second) the party, being so seized or possessed of any such estate or

222

interest, has before death transferred, so as to take effect in possession after his death, such estate or interest to any of the defined class of collaterals. The question before the court in the present record falls within the second category.

In the present case, the owner, who was seized or possessed of real and personal property, conveyed and assigned it absolutely to a third party in trust, with power to sell, lease, mortgage, or convey, and the net income thereof to pay to the grantor for and during her natural life, with the power to dispose of all or any part of the corpus of the trust as the grantor should by her last will direct, and, in default of such appointment, then, in further trust, that the trustee divide, transfer, and pay over the trust estate among the heirs of the grantor. The legal estate in fee simple in the realty and an absolute legal title in the personalty passed by this deed to the trustee, and so remained until the trust was determined according to its terms and purpose. The grantor made no exception, but conveyed her entire interest in the whole of the property to the trustee. As a result of the terms of the grant, she created an equitable life estate in herself with remainder in her heirs, defeasible in whole or in part upon the exercise by her of her power to dispose of the trust estate, in whole or part, by a last will. So she had no estate nor interest, save an equitable life estate, which, of course, was neither descendible, distributable, nor transmissible. It is true that the grantor was the donee of a power to will, and could thereby appoint the corpus in whole or in part. The reservation of a power is not an exclusion from the operation of the grant of a certain part of what is conveyed by its general words of description, nor the creation by the grantor for his benefit of a new thing "issuing out of" the land and not previously in existence. *Infra*. The creation, therefore, of a power to appoint is neither an exception nor reservation within the technical meaning of those terms, although the terms have been applied in connection with a clause in a conveyance by which the grantor retains a power of disposition over the land conveyed. 2 *Tiffany, Real Property* (2nd Ed.), sec. 436, page 1606. However, as is evident from the

quotation from Mr. Tiffany's work that is found in the decision of the court, the use of the term "reservation" in this connection is justifiable on the ground of convenience rather than of accuracy, and is not objectionable in the ordinary case. This qualified approval of the extension of the application of the term "reserve" and "reservation" does not, however, alter the essential nature of a power to appoint by will, which is neither an estate nor an interest in the subject-matter of the power. For the donee of the power has neither legal nor equitable title to the property over which the right to appoint exists, and so possesses no exclusive rights of any form of legal or equitable ownership whereby any use, enjoyment, or dominion of the property which may be appointed inures to her by virtue of any estate or right in such property. *International News Service v. Associated Press,* 248 U. S. 215, 39 S. Ct. 68, 63 L. Ed. 211; *De Lauder v. Baltimore County,* 94 Md. 1, 6, 50 A. 427; *Royal Ins. Co. v. Drury,* 150 Md. 211, 225, 132 A. 635.

The power to appoint was limited in time and in mode of execution; and the donee could, in a proprietary capacity, neither alienate, bargain and sell, bequeath nor devise the property which might be appointed (a). Nor, in the absence of fraud in the inception of the deed, could this property be made subject to the claims of appointor's creditors, whether in bankruptcy, insolvency, or otherwise; nor could it be taken by them in attachment or execution howsoever (b); nor is it subject to dower of the wife of the donee (c).

(a) *Wilks v. Burns,* 60 Md. 64, 68; *Worthington v. Rich,* 77 Md. 265, 269-270, 26 A. 403; *Chenoweth v. Bullitt,* 224 Ky. 698, 6 S. W. (2nd) 1061; 2 *Tiffany on Real Property* (2nd Ed.), sec. 327, p. 1093, sec. 322, n. 41. (b) *Balls v. Dampman,* 69 Md. 390, 394-395, 16 A. 16; *Price v. Cherbonnier,* 103 Md. 107, 110-111, 63 A. 209; *Prince de Bearn v. Winans,* 111 Md. 434, 472, 74 A. 626; *Jones v. Clifton,* 101 U. S. 225, 229-231, 25 L. Ed. 908; *Story's Equity Jur.* (14th Ed.), sec. 250 (176); *Cleveland Nat. Bank v. Morrow,* 99 Tenn. 527, 42 S. W. 200; *Holmes v. Coghill,* 12 Ves. Jr. 206; *Rhode Island Hospital Trust v. Anthony,* 49 R. I.

339, 142 A. 531, reported in 59 *A. L. R.* 1501, with an able and comprehensive statement of the conflict of authority on the rights in equity of creditors of a donee who has executed a general power of disposition. See *Tiffany, Real Property* (2nd Ed.), sec. 332. (c) *Ray, v. Pung,* 5 B. & Ald. 561; *Sugden on Powers* (8th Ed.), 144, n.; *Armstrong v. Kerns,* 61 Md. 364, 369.

Quoting from *Mutual Benefit Society v. Clendinen,* 44 Md. 429, 433: "A power is defined to be a liberty or authority reserved by, or limited to, a party to dispose of real or personal property for his own benefit, or for the benefit of others, and operating upon an estate or interest, vested either in himself or in some other person; the liberty or authority, however, not being derived out of such estate or interest, but overreaching or superseding it, either wholly or partially." *Butler,* note 1 to Co. Lit. 342b; 1 *Chance on Powers,* sec. 1. Again: "That a person having a power over property has not, in strictness, any interest in, or right or title to, the property to which the power relates, appears in early authorities." *Albany's Case,* 1 Co. 110b; *Lampet's Case,* 10 Co. 48b; *Co. Lit.* 265b. "Though where the power is for his own benefit, he has the means of acquiring such interest, right or title; and in all cases, by the execution of the power, the possession, right, title or interest is altered or divested." *Id.,* sec. 2; *Mandrell v. Mandrell,* 10 Ves. 246b, 255; 1 *Sugden on Powers,* *121; 4 *Kent, Commentaries,* *319.

Mr. Tiffany sums up the matter in the statement that "a power over land, a mere ability to dispose thereof, is obviously not an estate therein nor does it involve rights of property or ownership." He, however, continues with these remarks: "It has even been said not to be an interest in the land, but whether this is so depends on the meaning which we may choose to give to the indefinite expression interest. Especially when the donee of the power may exercise it for his own benefit does it seem difficult to say that he has no interest in the land." *Tiffany on Real Property* (2nd Ed.), sec. 310.

It may be urged in reply to this view that no legal or equitable interest in the property to be appointed can arise in a donee under a general power of appointment until the power is first executed, since the interest in the appointee has no existence except by virtue and as a result of the exercise of the power. Moreover, the right to exercise the power is not an interest within the meaning of the statute, because by its explicit terms the interest contemplated must be in an estate in real, personal or mixed property, public and private securities for money of every kind passing from a testator or intestate, or transferred by the donor by deed, grant, bargain, gift or sale. It may further be stated that, as the appointment is to be made by will and not by deed or will, it could not be exercised except by a testamentary disposition. And so, upon these considerations, and in view of this court's approval, in *Mutual Benefit Society v. Clendinen,* 44 Md. 433, of the doctrine, it is sound in principle and on authority to insist that the donee, *qua* donee, has neither any interest in nor right nor title to the property over which the power may be exercised. *Tiffany, Real Property* (2nd Ed.), secs. 310, 313-315, 317, 318.

It follows from these principles and conclusions that, upon the death of the life tenant in the equitable estate, she was not seized and possessed of any right, title or interest passing from her to any one whomsoever. The equitable estate in remainder, which under the deed of the donor had been in her heirs at law, defeasible upon her execution of a retained power of disposition by last will, was defeated, and an equitable remainder or executory interest vested in the appointees, as a result of the execution of the donor's power of testamentary disposition. *Supra.* The collateral parties holding under and by execution of the power took under the donor, *qua* donor, and in like manner as if the power, and the instrument executing it, had been incorporated in the instrument by which the donor created the power. So, if there be a lien of judgment or execution on the equitable estates or interests which had its origin during the period

between the creation of the power and its execution, or a dower claim of the wife of any person entitled in default of appointment, these will be defeated by the making of the appointment. *Tiffany, Real Property* (2nd Ed.), secs. 314, 315; *Conner v. Waring,* 52 Md. 724, 732-734; *Armstrong v. Kerns,* 61 Md. 364, 368-369; *Reed v. McIlvain,* 113 Md. 140, 146, 77 A. 329; *Albert v. Albert,* 68 Md. 372, 12 A. 11; *Thomas v. Gregg,* 76 Md. 174, 24 A. 418.

Hence the parties taking under the power derive their estate from the deed creating the power; and their rights are ascertained and enforced according to the construction of this deed, with the instrument whereby the power has been executed incorporated in the deed as an integral part thereof. The document thus completed, when construed as of the date of the execution of the deed, will determine the estate and interest of the appointees of the power. *Supra.*

Unless, therefore, the deed to the trustee, as thus amplified and completed, was made or intended to take effect in possession after the death of the grantor, no collateral tax is imposed by the statute. The solution of this problem must begin with a determination of the legal effect of the conveyance as completed by the incorporation therein of the terms of the execution of the power. The deed conveyed *in praesenti* the absolute and complete legal title to the subject-matter of the grant to a trustee, who took immediate possession of all the property for the use and benefit of the grantor for her life, and then for the heirs of the grantor in remainder, and for such appointees, if any, of the equitable estate or interest, in remainder or executory limitation under an executed testamentary power. The deed, therefore, became effective from its date, and immediate and actual possession of the legal title and estate was taken by the trustee. And so with respect to the equitable title and estate, which, while divided into an equitable life estate and an equitable estate in remainder or executory limitation, devolved forthwith and at once, in accordance with the principles stated, upon the life tenant, and those taking in remainder, and, in the event of an appointment, upon those appointed to take by

way of remainder or executory limitation. *Tiffany, Real Property* (2nd Ed.), secs. 313,315. The possession of the equitable life tenant and of those entitled to take, by way of remainder or executory limitation, after the death of the life tenant, was not an actual occupancy or custody of the corpus of the trust, since this actual possession was only possible to the trustee as the holder of the legal title under an active trust. So the estate created, from its inception, was not susceptible of actual possession by the beneficiaries of the trust, but these beneficiaries, first, the life tenant and the heirs holding in defeasible remainder, and then the appointees under the power, took and held their respective equitable titles and estates from the date of the execution of the deed, and were entitled and had under the deed their respective rights and titles to full but successive enjoyment of the benefits of such equitable estates from the date of the deed. The circumstance that the enjoyment of the benefits of the trust was successive instead of contemporaneous does not postpone or defer the time of the acquisition of the equitable title of the remaindermen and appointees to that of the death of the life tenant, when all took and held their titles as of the same date by virtue of the same document of title. It would be a denial of the deed, of authority, and of long-established principles of construction, if it be declared that the grant of the appointee's title was intended by the grantor, or could be assumed by the court, to be inoperative until the death of the life tenant. *Supra.* If such were the law, a deed by A to B, in trust for C for life, and then over to D, would not transfer any title to D until C's death. In the teeth of the express transfer of title by the deed to the appointee, and from the nature of the case, it cannot be logically said that the terms of the deed establish that it was made or intended to take effect in possession, with respect to the appointee's title, only upon the death of the life tenant. The circumstance that the grantor in the deed of trust became thereby an equitable life tenant, with a power of testamentary disposition, is immaterial.

The title, estate, and interest of the grantor as owner in fee simple of the realty and absolutely of the personalty conveyed and assigned in trust to a trustee, and then as an equitable life tenant of the trust estate created, with a power of testamentary disposition over the corpus of the trust, are as successive and separate as though the grantor and life tenant were different persons; and, in the absence of fraud, must be here so regarded in the application of the principles of law relative to these titles, estates, and interests. And, similarly, the donor and appointor are to be treated as if they were distinct individuals. *Brown v. Renshaw,* 57 Md. 67; *Farlow v. Farlow,* 83 Md. 118, 34 A. 837; *Nevin v. Gillespie,* 56 Md. 320; *Benesch v. Clark,* 49 Md. 497, 504; *Conner v. Waring,* 52 Md. 724; *Foos v. Scarf,* 55 Md. 301, 310; *Albert v. Albert,* 68 Md. 352, 372, 12 A. 11; *Ridgely v. Cross,* 83 Md. 161, 34 A. 469; *Welsh v. Gist,* 101 Md. 606, 608, 61 A. 665; *Cook v. Councilman,* 109 Md. 638, 72 A. 404; *Marden v. Leimbach,* 115 Md. 206, 80 A. 958; *Beranek v. Caccimaici,* 157 Md. 144, 145 A. 369.

The appeal of *Fisher v. State,* 106 Md. 104, 66 A. 661, is not a refutation but an illustration of the application of the position taken by this dissent. There by will a testator gave property to trustees for the use and benefit of his wife for life, with a general power in the equitable life tenant to appoint by last will, and the wife executed the power by giving the estate to a collateral, and the estate was held subject to the collateral inheritance tax. This was true, because the instrument whereby the appointor exercised the power became, on the principles stated, the complementary part of the will of the donor, and the appointee took and held under the donor's will, which, as thus completed and read, was effective at the donor's death and was the sole source of the appointee's estate. *Supra; Downes v. Safe Dep. & Tr. Co.,* 157 Md. 87, 145 A. 350; *Miller's Construction of Wills,* 742, 743.

2. Whether regarded as equitable estates in remainder or as executory limitations, the title of the appointees thereof took effect by relation as of the date of the execution of the

deed, but, while seized and possessed in interest, the appointees were not seized and possessed in enjoyment until the death of the equitable life tenant. Although this postponement of enjoyment was according to the nature of the successive equitable estates created by the deed, and did not defer the transfer by relation of the title and estate in interest to the appointees from the date of the execution of the deed to the day of the death of the equitable life tenant, who had been the grantor to the trustee, yet it apparently furnishes a stronger basis for the prevailing opinion than the one adopted. However, this seeming support disappears upon analysis.

If the correct construction of the statute should reject as controlling the time at which the document of transfer becomes operative, and should declare that no matter when the estate or interest is created, the right, at the death of the maker of the document, to the present actual beneficial occupation or enjoyment of the estate or interest in the property of the maker, within the state and transferred to collaterals as defined by the statute, is the final and determinative test for the imposition of the tax, this conclusion must depend upon the language of the statute: "Transferred by deed, will, grant, bargain, gift or sale, made or intended to take effect in possession after the death of the grantor, bargainor, devisor or donor," when considered in connection with the context of the law. This second clause refers grammatically to the instrument of transfer; and the difficulty arises over the term "to take effect in possession" after the death of the maker of the instrument. If a party die testate or intestate, and his estate, whether vested in interest or in possession, descend or pass to collaterals, there is no problem, and, obviously, the portion of the law now being considered was to cover those instances where the estate passed to collaterals at the death of the party by virtue of some other instrument than a will. This conclusion is fortified by the fact that the tax is on a transfer at death of the then ownership of property.

Again, the key word of the construction is "possession," which is a slippery term. Its meaning is various, particularly when used in a statute with reference to every possible form of real, personal, and mixed property. *National Safe Deposit Co. v. Stead,* 232 U. S. 58, 67, 34 S. Ct. 209, 58 L. Ed. 504; *Greenwich Bank v. Hartford Ins. Co.,* 250 N. Y. 116, 125, 164 N. E. 876; *Leslie v. Rothes* [1894], 2 Ch. 499, 506. One of these meanings is ownership apart from any question of immediate occupancy or use. And, in this sense, it is in harmony with the present language of the statute. *Webster's Dictionary; Century Dictionary.* It is of some significance that the original statute (Acts of 1844, ch. 237, sec. 1, lines 10 and 11) read: "Made or intended to take effect in possession or enjoyment." In 1860, the General Assembly re-enacted the statute and omitted the words "or enjoyment," and they have never been restored by any successive amendment. Code of 1860, page 5, and Code of 1924, art. 81, sec. 124, and *supra.*

The estates which are so limited as not to be vested in present possession, but to be in expectancy or future possession, are reversions, remainders, and executory interests. So a grantor who held such an estate *in futuro* could not, by any deed or other instrument whatsoever, grant, devise, bequeath, or transfer such an estate so as to take effect in possession at his death, if, at his death, the event or contingency upon which is limited his right to a present possession and enjoyment of the property had not then happened. Therefore, if the proper construction of the words "to take effect in possession" is not equivalent to become operative as a transfer of ownership, whether the subject-matter of the transfer be an estate in present possession or one in expectancy or future possession, there would be no collateral tax laid upon an estate *in futuro* of the decedent. The statute, however, is plain that no distinction was intended to be made in the imposition of the collateral inheritance tax on whether or not an estate or interest was *in praesenti* or *in futuro,* and this is a convincing argument that the words "to take effect in possession" do not refer to estates or in-

terests, but only to those documents of title which are designed to become operative as a transfer of interest of estate at the time of the death of the maker. Code, art. 81, secs. 124, 138, 139.

Since the context demonstrates that the law concerns the estate passing from the owner at death, and not a transaction operating *inter vivos,* all documents of title which are delivered with the intention of taking effect at the time of delivery and not at the death of the maker are not within the terms of the act. The phrase "take effect in possession after the death" must be read with this circumstance in mind and in association with the other phrase "all estates * * * passing from any person who may die seized and possessed," which language evidently embraces every form of ownership, whether with the right of present or future occupancy, enjoyment, or use. So it must be concluded that, declaring the transfer of every form of property, whether vested, contingent, or with its occupation, use, or enjoyment subsisting or *in futuro,* by a document of title which was made or intended to take effect in possession after the death of the maker, to be subject to the tax, was an enactment that applied to those documents which would become operative in the transfer of title or ownership at the death of the maker by reason either of the nature of the instrument or of its terms or the condition of its delivery. *State v. Dalrymple,* 70 Md. 297, 299, 17 A. 82. So, if the document of transfer is effective as a testamentary paper, or is one which does not become operative to pass title or ownership except at and upon the maker's death, or is one whose terms are a cover for what is actually a transfer of ownership at death of the maker, the statute applies, as the transfer of title or ownership is deferred until the maker's death, because a testamentary writing is ambulatory until death of the testator; a document of title conditional on its maker's death does not transfer title or ownership until the fulfillment of the antecedent condition or event upon which ownership is made to depend; and a feigned transfer so as to have and enjoy one's property as owner until death and then to transfer to collaterals title and owner-

ship in what remains, is, when disclosed, an actual transfer of title and ownership at death. The first two classes of documents of title are too familiar to need comment or illustration. *Tiffany on Real Property* (2nd Ed.), secs. 461, 462, pp. 1763, 1768-1774, 1778-1788; *Kelleher v. Kernan,* 60 Md. 440; *Carey v. Dennis,* 13 Md. 17; *Clark v. Creswell,* 112 Md. 339, 76 A. 579; *Renehan v. McAvoy,* 116 Md. 359, 81 A. 586. The third class is exemplified by the cases of *Smith v. State,* 134 Md. 474, 478, 107 A. 255, and *Lilly v. State,* 156 Md. 94, 100, 143 A. 661.

In the first of the two cases last cited an active trust was created. The grantor became the equitable life tenant, and at her death the estate passed to her heirs at law and next of kin, with power in the grantor to appoint by last will among such persons as she should direct, but the grantor reserved the paramount power of completely revoking and rescinding the instrument by deed, which would be an act of complete dominion by, and in behalf of, the grantor. 134 Md., pages 478, 479, 107 A. 255, 257. It is true the grantor did not rescind the deed, but exercised the power of testamentary disposition, which, the court remarked, "of course, could only take effect after she had departed this life." In view of the decisions, this is correct only to the extent of referring to the power taking effect in enjoyment and not in title or interest. *Supra.*

In the second case, the husband was the owner of valuable real estate, which, for his purpose, he conveyed to a third party for a nominal consideration, and immediately the straw man reconveyed the land, for a consideration of one dollar, to the husband as sole trustee for the use and benefit of the husband's wife for life, and for his benefit for life, if he survived her, and, upon the death of the survivor, then over to the heirs of the husband, with power in the husband to appoint by will; and also, with power, *inter alia,* to the trustee to sell and convey all or any part of the land, and to mortgage the same, with no obligation on the part of the purchaser or mortgagee for the application of the purchase money; and to change, in his discretion, the investment of the

whole or any part of the trust estate. In addition to these wide powers, the husband as trustee was authorized to pay to his wife, for her support and protection, such amounts from the principal of the trust as he might see fit; and the husband and wife had the power (a) to revoke and rescind the trust, whereupon all the property was to vest absolutely in the husband, his heirs and assigns, and (b) to change and rechange or terminate, at any time and to any extent, the terms of the deed of trust. 156 Md., pages 100-102, 143 A. 661. The husband died first, and executed the power of disposition by a will giving the property to collateral relatives.

The terms, nature and object of the deeds in these two cases make manifest that the instruments were, in fact, a shift or device whereby the grantor, while apparently creating an estate in another *in praesenti,* actually held in substance the right of an absolute owner of the property until his death. *Downes v. Safe Dep. & Tr. Co.,* 157 Md. 87, 94-96, 145 A. 350.

The deed in this record falls within none of the classes of documents of title transferring title or ownership of property at the death of the maker and owner, and so, for the reasons here urged, it is submitted, no collateral inheritance tax was collectible. The recent decision of *Downes v. Safe. Dep. & Tr. Co.,* 157 Md. 87, 145 A. 350, is in point, and, on principle, authority for this dissent. "When the Legislature saw fit to limit the application of a collateral inheritance tax to property passing from any person 'who may die seized and possessed thereof,' it was their purpose not to have the tax apply to other property, if we are to be governed by the plain meaning of the language used, and if at the present time it is thought wise to modify or do away altogether with this limitation, that is a legislative function and not such as the courts are warranted in usurping by judicial decision," is what this court, speaking through Judge Digges, then said should be our guide in construction. 157 Md., page 96, 145 A. 350, 353; Code, art. 81, secs. 124, 135, 136, 139, 143. And applying this rule, this court declared in that case that the section under consideration "does not mean that every

234

estate conveyed by deed, the beneficial use of which is to take effect in possession after the death of the grantor, is subject to the tax, but only such estates of which the grantor died seized and possessed." 157 Md., page 91, 145 A. 350, 351.

It must be admitted that the meaning of the act is not clear, but that is all the more reason that the State should not be a favored suitor. There should be no impairment of the wise principle that in the construction of acts imposing taxes the benefit of a doubtful meaning should be accorded the individual. *Sutherland on Statutory Construction,* secs. 362, 363.

DIGGES, J., also dissents.