## DAVID SATCHELL AND ROSCOE LeSANE a/k/a EARL McDougle v. STATE OF MARYLAND

[No. 966, September Term, 1982.]

*Decided April 12, 1983.*

The cause was submitted on briefs to Wilner, Weant and Bishop, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Michael R. Braudes, Assistant Public Defender,* for appellant Satchell. Submitted by *Alan H. Murrell, Public Defender,* and *David P. Sutton, Assigned Public Defender,* for appellant LeSane.

Submitted by *Stephen H. Sachs, Attorney General, Carmina Szunyog, Assistant Attorney General, Kurt L. Schmoke, State's Attorney for Baltimore City,* and *Lawrence Doan, Assistant State's Attorney for Baltimore City,* for appellee.

BISHOP, J., delivered the opinion of the Court.

Appellants were convicted by a jury in the Criminal Court of Baltimore of daytime housebreaking and, on April 19, 1982, were each sentenced to ten years imprisonment.

Appellant Satchell raises three questions in his appeal:

1. Was he denied his right to be tried within 180 days in accordance with Maryland Rule 746?

2. Was he denied his constitutional right to a speedy trial?

3. Did the trial court err in the manner in which it reinstructed the jury in response to a jury question raised after the jury began to deliberate?

Appellant LeSane also raises three questions:

1. Should certain evidence have been excluded because of an alleged unconstitutional seizure?

2. Did the trial court's supplemental instructions to the jury constitute prejudicial error?

3. Should appellant have been granted a mistrial because of the improper admission of evidence of other crimes.

## Facts

At about 10:00 P.M., on Thursday, March 26, 1981, Eva Abramson and her daughter, Shandy Abramson, were in their house with an elderly person when the doorbell rang. Peeking through the curtain, Eva Abramson saw Satchell, whom she did not know, ringing the bell. She did not answer the door and, after ringing the bell "for about five minutes," Satchell left. Eva Abramson slipped out of the house and followed Satchell in her car to a nearby supermarket parking lot, where she saw him join three other men in a yellow van. Eva Abramson then drove to her son's house and reported the incident to the police.

Meanwhile, two other men came to the Abramson house from the vicinity of the parking lot. They too rang the front doorbell, and then went to the back of the house and rang the back doorbell. Shandy Abramson did not answer either door and called the police. The men returned to the parking lot area.

Shortly after 10:00 P.M., on Thursday, March 26, 1981, acting on the calls from the Abramsons, plus information that they had received from the police radio that the persons observed by the Abramsons had been involved in a burglary of the Barrash residence on Menlo Drive, the police stopped the yellow van, which was being driven by appellant LeSane. When LeSane produced a driver's license belonging to a third party, he was ordered from the van. As he alighted a pistol (which later turned out to be a starter's gun) was seen on the dashboard. Thereupon, the three passengers, Satchell, David Edwards and Leonard Davis were ordered out of the van. As they alighted, Satchell pulled a cover over a pile of items in the back of the van. The police pulled the cover back and found items from the Barrash residence.

### Satchell

### I.

### Maryland Rule 746

The Maryland Rule 746 issue in this case requires that we consider not only that rule, but also its relationship with Maryland Rule 745 (c), Prejudicial Joinder. We set out herein the pertinent parts of these rules:

Maryland Rule 746:

a. General Provision.

Within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723, a trial date shall be set which shall be not later than 180 days after the appearance or waiver of counsel or after the appearance of defendant before the court pursuant to Rule 723.

b. Change of Trial Date.

Upon motion of a party made in writing or in open court and for good cause shown, the county administrative judge or a judge designated by him may grant a change of trial date.

Maryland Rule 745 (c) Prejudicial Joinder

If it appears that any party will be prejudiced by the joinder for trial of counts, charging documents or defendants, the court may, upon its own motion or the motion of any party, order separate trials of counts, charging documents or defendants, or grant any other relief justice requires.

The chronology of Appellant Satchell's case follows:

March 26, 1981 — arrest

March 27, 1981 — bail

April 30, 1981 — indictment

May 21, 1981 — Arraigned; appearance of public defender Carey for Satchell.

LeSane failed to appear; bench warrant issued

[no entry of appearance by Carey for LeSane but records indicate documents filed by Carey for LeSane].

June 12, 1981 — Motion to sever: Satchell

June 22, 1981 — LeSane apprehended

August 6, 1981 — Appearance new attorney for Satchell

August 17, 1981 — hearing: Satchell, Davis, Edwards, LeSane

Original trial date postponed at request of LeSane to obtain private counsel.

Edwards and Davis agreed to waive 180 days rule.

Satchell refused to waive 180 days rule [severence denied] (88th day).

August 18, 1981 — Satchell files speedy trial motion.

October 15, 1981 — Appearance of new attorney for LeSane [despite this LeSane was represented at trial by Carey].

November 23, 1981 — Two State witnesses unavailable.

Davis failed to appear — Bench warrant issued for Davis. Trial date for Edwards, LeSane and Satchell postponed to December 1, 1981 (186th day).

December 1, 1981 — Trial date: Edwards, LeSane and Satchell. Case put on move list.

December 18, 1981 — [Edwards enters guilty plea].

December 21, 1981 — Hearing Edwards and Satchell: Motion to Dismiss.

December 22, 1981 — Dismissal motion denied. Trial commences.

December 23, 1981 — Trial concludes: guilty verdicts.

April 19, 1982 — Sentencing.

April 27, 1982 — Appeal.

Appellant argues:

"The docket entries reflect that appellant was arraigned on May 21, 1981; the first appearance of his counsel was entered on that date. Trial commenced December 21, 1981, some 212 days later. The case was originally scheduled for trial on August 17, 1981. The State at that point wished to try appellant, LeSane, and two others together. On that date all four defendants appeared in court. LeSane requested a postponement to obtain private counsel. Two of his co-defendants (a Mr. Edwards and a Mr. Davis) agreed to the postponement. Appellant objected."

* * *

> Appellant's right to be tried within 180 days of arraignment was violated because a co-defendant needed a continuance to obtain counsel. Appellant himself did not need a continuance, objected to it, and demanded a speedy trial. The State could have tried Appellant separately within the 180-day period, but decided that it was in its best interest to try him jointly with others who were not prepared for trial."

Appellant cites numerous authorities, none of which support his argument that the above chronology violated Maryland Rule 746.

In *Epps v. State,* 276 Md. 96 (1975) the Court held that a case should not be postponed where the defendant is ready to go to trial simply because the State wishes to try him jointly with others. *Epps* was a constitutional speedy trial case, to which very different standards apply. *State v. Lattisaw,* 48 Md. App. 20, 27 (1981). There is no statutory provision for good cause in a constitutional speedy trial setting. In *Epps,* Judge O'Donnell applied the four criteria set out in *Barker v. Wingo,* 407 U.S. 514 (1972) and properly concluded that Epps had been denied his constitutional right to a speedy trial. A most important factor in reaching that conclusion was the actual prejudice suffered by Epps in the unavailability of a key witness at the time of the trial on August 22, 1973, who had been available on December 28, 1972, the original trial date and the date on which Epps insisted that he be tried. In the case before us the only issue is whether the administrative judge erred when he found that there was good cause to postpone the appellant's case along with the cases of the other defendants. In *Epps,* at 117, the Court although finding them factually distinguishable from *Epps,* cites several federal cases which support the ruling of the trial court in this case that the desire of the State for a joint trial and the acquiescence of three of the four defendants to the postponement may amount to good cause within the constitutional speedy trial setting. *See United*

*States v. Annerino,* 495 F. 2d 1159, 1162-64 (7th Cir. 1974); *United States v. Phillips,* 482 F. 2d 191, 195-96 (8th Cir.), *cert. denied,* 414 U.S. 1114 (1973); *United States v. DiTienne,* 468 F. 2d 151, 156-58 (7th Cir. 1972), *cert. denied,* 410 U.S. 911 (1973); *United States v. Carosiello,* 439 F. 2d 942, 944-45 (3d Cir. 1971); *Hedgepeth v. United States,* 364 F. 2d 684, 687-89 (D.C. Cir. 1966).

We pointed out in *Lattisaw, supra,* at 27, that delays are not always attributable to prosecutorial laxity and that the problem of picking a suitable trial date "increases in complexity when there are multiple defendants."

As the State points out, Maryland Rule 746 makes no provision for severance; the only ground for severance is stated in Maryland Rule 745 c, *supra.*

In *State v. Jones,* 284 Md. 232, 238 (1979), the Court pointed out that the granting *vel non* of a severance is in the discretion of the trial judge, who must balance ". . . the need to avoid prejudice to the defendant against the need to promote economy and efficiency in the administration of justice." Rule 746, which is designed to promote the economic and efficient administration of justice, requires the same balancing. *Carter and Turner v. State,* Md. App. (Nos. 537 and 538, S.T. 1982, filed _____ 1983) Slip Op. at 10-12; *State v. Hicks,* 285 Md. 310 (1979).

If the judge had granted the postponement as to the other three defendants and complied with the request of Satchell that he be permitted to go to trial alone on August 17, 1981, he would have in effect severed the cases.

Although it is not explicit in the record, our review of the record leads us to conclude that the administrative judge, in exercising his discretion in granting the postponement and denying a severance, applied the balance required by *Jones, supra.*

Rules, like statutes, must be read together, *DuPont Glore, Forgan, Inc. v. Barshack,* 271 Md. 316, 319 (1974); *Silverberg v. State,* 35 Md. App. 222, 223 n. 3 (1977), and rules relating to the same subject matter will be construed to harmonize with each other "and not produce unreasonable

or foolish results." *Baltimore Transit Co. v. Mezzanotti,* 227 Md. 8, 19-20 (1961); *Mace Produce v. State's Attorney,* 251 Md. 503, 510-11 (1968); *Grandison v. State,* 32 Md. App. 705, 714 (1976); *Boyd v. Boyd,* 32 Md. App. 411, 420 n. 3 (1976). As the Court stated in *Johnson v. State,* 274 Md. 29 at 41 (1975):

> "The meaning of a Rule 'does not depend upon the niceties of definition but upon the reasonable intendment of the language used in the light of the purpose to be effectuated,' *Brown v. State,* 237 Md. 492, 504, 207 A.2d 103, 111 (1965), citing *Shub v. Simpson,* 196 Md. 177, 191, 76 A.2d 332, 337-38 (1950), and *Darnall v. Connor,* 161 Md. 210, 214-16, 155 A. 894, 896-97 (1931); and the Maryland Rules, like statutes, when dealing with the same subject matter will be construed so as to harmonize with each other and not produce an unreasonable result. *See Baltimore Transit Co. v. Mezzanotti,* 227 Md. 8, 19-20, 174 A.2d 768, 774 (1961)."

Giving effect to the good cause provision of Rule 746 and the discretionary balance required of the trial judge under Rule 745 (c), we hold that the trial judge in the case *sub judice* prudentially exercised his discretion in construing the two rules *in pari materia.*

## II.

### Satchell

### Speedy Trial

We agree with appellant that the length of the delay was sufficient to trigger the *Barker v. Wingo,* 407 U.S. 514 (1972) balancing process. Prejudice is therefore presumed. We hold, however, in accordance with *Darby v. State,* 45 Md. App. 585, 589 (1980) that "A delay of less than nine months, though sufficient to trigger the balancing test, is not a grossly inordinate one." Appellant's speedy trial motion was filed on August 18, 1981, and trial was started on December

22, 1981, slightly over four months later. When the case was called for trial on November 23, 1981, Davis, one of the other defendants, failed to appear and two State's witnesses were not available. On December 1, 1981, a subsequent trial date, the case was again postponed because of a conflict in the prosecutor's schedule. Applying the *Barker v. Wingo* balancing test, we would classify the five month period from the arrest on March 26, 1981 to August 17, 1981, as essentially neutral. We charge the three month period from August 18, 1981 to November 23, 1981, to the State, but we do not weigh this heavily against the State. The time from November 23, 1981 to December 1, 1981, is neutral. We do hold that the 21 days thereafter must be charged against the State and heavily in favor of the appellant.

The only prejudice raised by the appellant is the anxiety caused by the delay. Appellant concedes that his pretrial incarceration was attributable to another criminal charge. The actual prejudice, if any, was minimal. On balance, after considering all of the foregoing, and including our analysis of *Epps, supra,* we do not believe that appellant Satchell's constitutional speedy trial rights have been violated.

### Satchell and LeSane

### Jury Instructions

Both appellants argue that in response to a question raised by the jury after deliberation had commenced, the court erred in re-instructing "solely with regard to the principle of law that a person in possession of recently stolen goods is presumptively guilty of burglary or theft." They argue further that the re-instruction should have been more balanced in that it should have included the State's burden of proof and the presumption of innocence instruction. After the re-instruction, appellants, through appellant LeSane's trial counsel, raised the following exception:

> ". . . I would feel that the instruction was somewhat one-sided, so that it pretty well puts the onus on the two defendants of being guilty because the merchandise was in the truck."

Maryland Rule 757 provides in part:

"f. Objection.

If a party has an objection to any instructions, to any omission therefrom, or to the failure to give an instruction he shall make the objection on the record before the jury retires to consider its verdict and shall state distinctly the matter or omission, or failure to instruct to which he objects and the grounds of his objection. Upon request of any party, the court shall receive objections out of the hearing of the jury.

h. Appeal.

An objection is not reviewable as of right unless it is made in compliance with section f of this Rule. An appellate court, either upon its own motion or upon the suggestion of a party, may take cognizance of and correct any plain error in the instructions, material to the rights of the defendant even though the error was not objected to as provided by section f of this Rule."

We do not believe that the appellants complied with the quoted sub-sections of Maryland Rule 757. Even if we assume that they did, however, we must hold that the re-instruction by the court was directly responsive to the specific question asked by the jury. In addition, the instruction was essentially the same as the original instruction, to which there was no objection. *See Funkhouser v. State,* 51 Md. App. 16, 31 (1982). Finally, the record discloses that the judge gave the exact re-instruction requested by the appellants before the re-instruction was given. We find no merit to this argument.

*LeSane*

## Exclusion of Evidence

Although this issue may have been included in an omnibus motion filed by the defendants, it was not argued before the trial court, that court did not rule on the issue and neither will we. Maryland Rule 1085. *Jones v. State,* 42 Md. App. 209, 214 (1979).

*LeSane*

## Evidence of Other Crimes

In responding to a question, Detective Street included among items found as a result of searching appellant a pre-trial release card. Appellant argues:

> "It is fair inference from the reference to the 'pretrial release card' that such offense was recent in origin. Moreover, defense counsel had no way of knowing in advance that the Detective's testimony would raise the specter of such a separate and distinct crime. Considered in connection with the offenses for which appellant was on trial its unwarranted injection into the State's case invited the jury to conclude that appellant should be punished as a 'bad man' regardless of his guilt of the charged crime."

The trial judge properly ruled that the jury was unlikely to attach any significance to the inadvertent remark. The court did offer, however, to instruct the jury to disregard the statement. Appellant refused the offer. Even if we were to believe, which we do not, that appellant had been damaged by the remark, we believe that the offered instruction would have "achieved the desired effect and adequately protected the right of the appellant to a fair trial." *Wilson v. State,* 261 Md. 551, 570 (1971). Quoting further from *Wilson* at 570: "Even in cases where a motion for mistrial is made, the discretion of the trial court is not disturbed on appeal, except

in the most plain and obvious instances of abuse." (Citation omitted).

We will not disturb the discretion of the trial court in this case.

*Judgments affirmed.*
*Costs to be paid by appellants.*